GEORGE TERRY, PLAINTIFF v. PULLMAN TRAILMOBILE, A DIVISION OF PULLMAN, INC.; PULLMAN TRANSPORTATION CO., INC.; WILSON TRAILER SALES & SERVICE, INC.; WILSON TRUCKING COMPANY, INC.; GLASS CONTAINER TRANSPORT COMPANY; EUMA TRUCKING, INC.; MERCER BROS. TRUCKING COMPANY; LANE TRUCK LINES, INC.; TRAILER SERVICE AND REFRIGERATION CO.; AND GLOVER TRUCKING CORP., DEFENDANTS

No. 887SC396

(Filed 7 February 1989)

**1. Appeal and Error § 6.2— partial summary judgment—appeal not premature**

A partial summary judgment against plaintiff affected a substantial right and was immediately appealable where plaintiff was severely injured while operating a tractor-trailer in New York and brought an action in North Carolina for the defective design, manufacture, and assembly of the trailer; the trailer had been manufactured in Texas, sold in North Carolina to a Virginia

corporation as part of a shipment for a North Carolina corporation; and was eventually resold and retained by another North Carolina corporation. Summary judgment for fewer than all of the defendants affected a substantial right because it created the possibility of inconsistent verdicts in separate trials.

**2. Courts § 21.5— product liability action—tractor-trailer accident in New York— New York law governs**

The North Carolina statute of repose did not govern the disposition of negligence and strict liability claims arising from a tractor-trailer accident in New York. Under the lex loci delicti rule, plaintiff was injured in New York, so his substantive rights with regard to the negligence and strict liability claims must be determined on the basis of New York law.

**3. Courts § 21.6— accident in New York—warranty claims—North Carolina law governs**

The trial court properly applied the North Carolina statute of repose to an action for breach of express or implied warranties arising from a tractor-trailer accident in New York because the sale and distribution of the trailer occurred in North Carolina.

**4. Courts § 21— conflict of law between states—separate from personal jurisdiction**

The application of New York law to plaintiff's claims arising from a tractor-trailer accident in New York was not patently unfair even though New York could not assert personal jurisdiction because choice of law is a separate inquiry from personal jurisdiction. The minimum contacts test does not apply in resolving conflicts of law issues.

APPEAL by plaintiff from *Phillips, Herbert O., III, Judge.* Order entered 28 November 1987 in WILSON County Superior Court. Heard in the Court of Appeals 6 December 1988.

Plaintiff, a resident of Texas, was severely injured on 21 August 1984, while operating a tractor-trailer in the State of New York. Plaintiff alleges that the accident was caused by the defective design, manufacture, and assembly of the trailer, including the portion called the sliding tandem bogey. The trailer was manufactured in Texas by Pullman Trailmobile, which sold it through its Kernersville, North Carolina office to defendant Trailer Service and Refrigeration Company, a Virginia corporation, as part of a shipment for defendant Lane Truck Lines, Inc., a North Carolina corporation. Lane accepted delivery of the trailer on 5 February 1977. It was subsequently resold, and was eventually obtained by defendant Mercer Brothers Trucking Company, a North Carolina corporation. Plaintiff, an employee of Mercer

Brothers Trucking Company, was operating the tractor-trailer when the trailer's wheels came loose and resulted in a single vehicle accident.

Plaintiff filed this action seeking to recover against defendants on claims of negligence, strict liability, and breach of implied and express warranties on 11 August 1987. Defendants Pullman Trailmobile and Pullman Transportation Co., Inc. and defendant Trailer Service and Refrigeration Company (hereinafter defendant) moved for summary judgment under the North Carolina statute of repose, N.C. Gen. Stat. § 1-50(6) (1983), which prohibits actions for personal injury damages arising out of alleged product defects or failures more than six years after the date of initial purchase for use or consumption. The trial court held that North Carolina law applied to all of plaintiff's claims and granted defendants' motions. Prior to oral argument plaintiff settled with Pullman Trailmobile and Pullman Transportation Co., Inc., and withdrew their appeal as to those defendants.

*Blanchard, Twiggs, Abrams & Strickland, P.A., by Douglas B. Abrams, for plaintiff-appellant.*

*Hedrick, Eatman, Gardner & Kincheloe, by Hatcher Kincheloe and Jennifer S. Brearley, for defendant-appellee Trailer Service and Refrigeration Co.; Maupin Taylor Ellis & Adams, P.A., by Thomas W. H. Alexander, James A. Roberts, III, and Jay A. Kania, for defendant-appellees Pullman Trailmobile, a Division of Pullman, Inc., and Pullman Transportation Co., Inc.*

WELLS, Judge.

[1] As a preliminary matter we consider whether this appeal must be dismissed as premature. The trial court's order granting defendant's motion for summary judgment did not certify that there was no just reason for delay, so it is not immediately appealable unless it affected a substantial right. *Oestreicher v. American National Stores, Inc.,* 290 N.C. 118, 225 S.E. 2d 797 (1976). The trial court confined its entry of summary judgment to the issue of whether North Carolina or New York law controlled the disposition of plaintiff's action, and effectively foreclosed plaintiff from bringing any of his claims against defendant.

We hold that the order granting summary judgment for fewer than all of the defendants affected a substantial right, because

it created the possibility of inconsistent verdicts in separate trials. As our Supreme Court explained this principle in *Bernick v. Jurden*, 306 N.C. 435, 293 S.E. 2d 405 (1982), if the case against the remaining defendants proceeded to trial, the jury could exonerate them by finding that the conduct of defendant Trailer Service and Refrigeration Co. caused plaintiff's injuries. Then, if the order of summary judgment in favor of defendant Trailer Service and Refrigeration Company was later reversed on appeal, at the ensuing trial the jury could find that the conduct of one or more of the previously-absolved defendants was responsible for the injury, and refuse to hold the defendant liable. The entry of summary judgment against plaintiff on the applicability of the North Carolina statute of repose affected a substantial right; therefore, this appeal is properly before the Court.

[2]   Plaintiff contends that the North Carolina statute of repose does not apply to this case because New York law governs the disposition of his negligence, breach of warranty, and strict liability claims. The statute of limitations for an action for personal injuries grounded in negligence or strict products liability under New York law is three years, N.Y. Civ. Prac. L. & R. 214 (McKinney 1989), for breach of warranty claims is four years, *Calabria v. St. Regis Corp.*, 124 A.D. 2d 514, 508 N.Y.S. 2d 186 (1986), and New York law contains no statute of repose, so plaintiff's claims would not be time-barred under New York law.

North Carolina follows the lex loci delicti rule (law of the situs of the claim) in resolving choice of law for tort claims. *Boudreau v. Baughman*, 322 N.C. 331, 368 S.E. 2d 849 (1988). The law of the place where the injury occurs controls tort claims, because an act has legal significance only if the jurisdiction where it occurs recognizes that legal rights and obligations ensue from it. Wurfel, *Choice of Law Rules in North Carolina*, 48 N.C.L. Rev. 243 (1970). "If a legal right arises at the locus [of the injury], this right vests in the injured party and he may enforce it not only at the locus but in the courts of other states and nations as well. If no right exists at the locus, there is none to enforce anywhere." *Id.* Plaintiff was injured in New York, so his substantive rights with regard to the negligence and strict liability claims must be determined on the basis of New York law.

The trial court granted summary judgment based on the North Carolina statute of repose, *supra*, determining that it barred the plaintiff's claim. We hold that because the substantive law of New York controls plaintiff's negligence and strict liability claims, and the statutes of repose are substantive provisions for purposes of choice of law, *Boudreau, supra*, the trial court erred in applying North Carolina's statute of repose to these claims.

[3] Plaintiff's breach of implied and express warranty claims, however, require a separate analysis. The choice of law provision applicable to these claims appears in the Uniform Commercial Code, N.C. Gen. Stat. § 25-1-105(1) (1986), and provides that North Carolina law "applies to transactions bearing an appropriate relation to this State." The North Carolina Supreme Court applied the appropriate relation test in *Bernick, supra*, to hold that North Carolina law governed the plaintiff's claims for implied and express warranties arising out of the injuries he suffered when his mouthguard, manufactured in Canada and purchased in Massachusetts, shattered during a college hockey game played in North Carolina.

Subsequently, the Supreme Court equated the Uniform Commercial Code "appropriate relation" test with the approach promulgated by the Restatement (Second) of Conflict of Laws, the "most significant relationship" test. *Boudreau, supra*. Therefore, to determine which state's law governs the breach of warranty claims we must discern which state "has the most significant relationship to the transaction and the parties. . . ." Restatement (Second) of Conflict of Laws § 188(1) (1971).

We note that the Court in *Boudreau, supra*, while adopting what it identified as the "most significant relationship" test, in actual application to the facts of the case departed from the policy-based analysis supplied by the Restatement (Second) to accompany that test and appeared to emphasize physical location of specific events instead. This interpretation does not expressly contradict the Restatement (Second) test, one portion of which inquires into locations of certain events, but concentration on other factors should be augmented in order to differentiate the new test from the stricter approaches previously followed in this State. The purpose for adopting G.S. § 25-1-105(1) (1986) was to

change North Carolina's adherence to the lex loci contractus approach, which focuses on the place of entering the contract and on the place of performance to determine which law governs contract disputes. By adopting the most significant relationship test the *Boudreau* Court appeared to move further away from the old approach, but its predominant inquiry into the "place of sale, distribution, delivery, and use of the product, as well as the place of injury," creates uncertainty regarding whether it fully embraced the integration of policy concerns with location factors that is the hallmark of that approach.

The *Boudreau* Court did indicate its intent to depart from the location-based lex loci contractus approach, however, and impliedly rejected the earlier interpretation of the appropriate relation test contained in *Bernick, supra.* Furthermore, the Court recited two policy rationales favoring the application of North Carolina law to disputes involving warranties: protecting the citizens of this State from defective goods and furthering our social and economic policies regarding warranties. We believe, therefore, that the Court's emphasis on physical location was not meant as a departure from the policy-based interpretation of the most significant relationship test as promulgated by the Restatement (Second) of Conflict of Laws.

In determining which state has the most significant relationship to the transaction and the parties, relevant factors to be considered include:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2) (1971). In applying these principles the following should be considered:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Id.* § 188(2) (1971).

With regard to the first consideration, it is important that the Uniform Commercial Code be applied uniformly throughout the United States in order to simplify interstate commercial transactions. Both North Carolina and New York have enacted the U.C.C., however, so the interest in promoting uniformity will be furthered by applying the relevant law of either state. This is also related to factor (g), ease in determining and applying the law; the provisions regarding warranties and statutes of repose are well-established in both states.

With respect to policies of the forum and other states, the state where the accident occurred has a greater interest in having its law apply in a tort case than in a breach of warranty action where the sale and distribution occurred elsewhere. Unlike the tort claim, where the place of personal injury is significant in determining whether there arose an actionable wrong, *Wurfel, supra,* personal injury is not the focal point when evaluating a contract for sale and accompanying warranties. Legal rights and obligations in the latter instance arose when the agreement was made, and although any ensuing personal injury is important in evaluating whether a breach of warranty actually occurred, any recovery stems from the warranties themselves.

Businesses have a justifiable expectation that the law of the state where the goods were sold and distributed will govern the warranties they impliedly or expressly extend. A different result would foster uncertainty as to the extent of their rights and obli-

gations, and also would undermine predictability and uniformity of result.

Basic policies underlying the field of warranties also support the application of the law of the place where sale and distribution occurred. In *Boudreau, supra*, the Court indicated that the state where the sale occurred "has a significant interest in applying the social and economic policies embodied in its own law of warranty." *Id. (citing Quadrini v. Sikorsky Aircraft Division*, 425 F. Supp. 81 (D. Conn. 1977)). These policies include protecting the State's citizens from commercial movement of defective goods into the State. *Id. (citing Oresman v. G. D. Searle & Co.*, 321 F. Supp. 449 (D. R.I. 1971)).

Because sale and distribution occurred in North Carolina, based upon the previous analysis we hold that the trial court properly applied North Carolina law to plaintiff's breach of warranty claims. Summary judgment was properly granted for the defendant, under the six-year statute of repose. We decline plaintiff's request to review the constitutionality of the statute of repose, and adhere to the North Carolina Supreme Court's decision in *Tetterton v. Long Manufacturing Co.*, 314 N.C. 44, 332 S.E. 2d 67 (1985) (G.S. § 1-50(6) is not unconstitutionally vague and does not deny equal protection).

[4] Finally, we address defendant's contention that applying the substantive law of New York to any of plaintiff's claims would be patently unfair because New York could not assert personal jurisdiction over it. Choice of law is a separate inquiry from personal jurisdiction and the two should not be confused. *Allstate Insurance Co. v. Hague*, 449 U.S. 302 (1981) (Stevens, J., concurring). The minimum contacts test used to determine whether a jurisdiction can assert personal jurisdiction over a defendant does not apply in resolving conflicts of law issues. *Id.*

We reverse the trial court's entry of summary judgment against plaintiff on his negligence and strict liability claims and remand for further proceedings. We affirm the trial court's entry of summary judgment against plaintiff on his breach of implied and express warranty claims.

Affirmed in part, reversed in part, and remanded.

Judges BECTON and JOHNSON concur.