DASSAULT FALCON JET CORP., Plaintiff,

v.

OBERFLEX, INC. and Societe Industrielle Ober, Defendants.

No. 1:94CV00194.

United States District Court, M.D. North Carolina, Durham Division.

Aug. 15, 1995.

346

Beth R. Fleishman, Robin Tatum Morris, Poyner & Spruill, L.L.P., Raleigh, NC, for plaintiff.

Richard F. Prentis, Jr., Terry D. Fisher, Stubbs, Cole, Breedlove, Prentis & Biggs, Durham, NC, for defendants.

## MEMORANDUM OPINION

ELIASON, United States Magistrate Judge.

This matter comes before the Court on defendant Societe Industrielle Ober's (hereinafter "SIO") motion for summary judgment. Plaintiff, Dassault Falcon Jet Corporation, brought this action against the defendants, SIO and Oberflex, Inc., for breach of contract, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. Jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332. Defendant SIO moves for summary judgment on all claims.

### Basic Facts

1. Plaintiff is an Arkansas corporation engaged in the business of customizing and selling aircraft. Defendant SIO is a French corporation which manufactures laminate veneer paneling. Defendant Oberflex is a North Carolina corporation, wholly owned by SIO, which imports and distributes SIO paneling within the United States.

2. Oberflex's sole business involves importing SIO products into North Carolina, and then selling them to wholesalers around the United States. Oberflex has not sold or shipped any products to a North Carolina company. (Pleading No. 23, Ex. A, Califano Depo. at 23)

3. Prior to 1992, Larry Califano, national sales manager for Oberflex, called plaintiff's office to solicit business. (Califano Depo. at 24) On January 24, 1992, plaintiff responded to Califano's solicitation and placed an order for veneer paneling to be installed in its aircraft. (*Id.* at Ex. D) Plaintiff placed the order by telephone.

4. Oberflex shipped plaintiff's order, along with an invoice, on January 24, 1992.

(*Id.* at Exs. D & E) The shipment was "F.O.B. North Carolina."[1] (Pleading No. 23, p. 9) Oberflex's invoice allegedly contained a choice of law provision selecting North Carolina law for the governance of the contract. Plaintiff mailed a written purchase order to Oberflex on January 27, 1992, which allegedly contained a choice of law provision selecting Arkansas law.[2] (*Id.*) Neither party notified the other of its acceptance or objection to either choice of law provision.

5. In January or February 1993, plaintiff notified Oberflex and SIO of problems it was allegedly experiencing with the veneer paneling. (*Id.* at Ex. E) In June 1993, Larry Califano visited plaintiff's Little Rock, Arkansas, facility to examine the product. (*Id.*) In July 1993, Oberflex ceased business operations and sold all assets. (*Id.*) Oberflex currently possesses no assets and SIO still owns 100% of its stock. (*Id.* at Ex. D)

### Discussion

In late 1992 and early 1993, plaintiff contends it began experiencing problems with the veneer paneling, and determined the product was defective and unsuitable for its use. (*Id.* at Ex. E) Plaintiff has now brought this action for breach of contract and breach of express and implied warranties against Oberflex. Defendant SIO has been made a defendant under theories of direct and derivative liability.

Plaintiff claims that SIO is liable for breach of contract, breach of express warranty, and breach of implied warranties of merchantability and fitness for a particular purpose. It alleges that SIO is indirectly liable under the theory that Oberflex was the mere agent or alter ego of SIO, thereby allowing plaintiff to pierce Oberflex's corporate form. Defendant SIO is also alleged to be directly liable for breach of the warranties. Defen-

---

1. The term "F.O.B. North Carolina" is a term of delivery. N.C.G.S. § 25–2–319. (F.O.B. means free on board. *Id.*) When F.O.B. is the place of shipment, as in the instant case, delivery takes place in North Carolina and plaintiff was responsible for the risk of carriage. *Id.*, and the North Carolina Comment; *Travenol Laboratories, Inc. v. Zotal, Ltd.*, 394 Mass. 95, 100, 474 N.E.2d 1070, 1074 (1985).

2. In its search of the record, the Court was unable to locate a copy of Oberflex's invoice or plaintiff's purchase order, both of which allegedly contain choice of law provisions. However, neither party disputes the existence of these invoices or orders. Their omission at this point is harmless because the Court has determined that neither clause became a part of the contract.

dant SIO has moved for summary judgment against both theories. Defendant SIO contends that there are not sufficient facts from which a jury could pierce the corporate veil under North Carolina law. As to the warranty claims, SIO alleges that North Carolina law requires privity of contract for breach of warranty actions and that there was no privity between itself and plaintiff.

■ A motion for summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). In considering the evidence, all reasonable inferences are to be drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

■ The resolution of SIO's summary judgment motion requires the Court to determine what state law to apply. A federal court applies the law of the forum state in a case premised upon diversity of citizenship jurisdiction. This includes the state's choice of law principles. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). For this Court, the forum state is North Carolina.

In the instant case, SIO argues for the application of North Carolina law with respect to the issues of piercing the corporate veil and breach of warranties. Plaintiff claims that Arkansas law should apply to both issues.

### Piercing the Corporate Veil

■ Defendant SIO contends that under North Carolina law there are insufficient facts from which a jury could pierce the corporate veil of Oberflex in order to hold SIO liable. Neither party briefed the choice of law matter for piercing the corporate veil separately from the warranty provision. Defendant SIO requests the court to apply North Carolina law on the grounds that the purchase order contained a choice of law provision electing North Carolina law. However, a choice of law provision in a contract is not binding on what law to apply for piercing the corporate veil. The reason for this is that the issue of piercing the corporate veil is collateral to and not part of the parties' negotiations or expectations with respect to the contract. It involves imposing liability on third-party shareholders as opposed to governing the parties' obligations under the contract. *Kalb, Voorhis & Co. v. American Financial Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) (New York law was applicable only to claims arising under debentures, but issue of veil piercing was governed by the state of incorporation); *United Trade Associates Ltd. v. Dickens & Matson (USA) Ltd., Inc.*, 848 F.Supp. 751, 759 (E.D.Mich.1994). Consequently, even if the Court were to accept SIO's argument that the contract contained a choice of law provision, that would not govern this Court's decision with respect to the issue of piercing the corporate veil. Rather, the Court will look to the choice of law principles of North Carolina law to determine the matter. *Klaxon, supra.*

■ North Carolina courts have not spoken to the issue of choice of law in piercing the corporate veil.[3] Therefore, this Court must predict how the North Carolina Supreme Court would rule if faced with this issue. *Wilson v. Ford Motor Co.*, 656 F.2d 960 (4th Cir.1981). The Court finds that the *Restatement (Second) of Conflict of Laws*

---

3. The North Carolina Court of Appeals has examined a piercing the corporate veil claim of a Florida corporation doing business in North Carolina in order to achieve personal jurisdiction over out-of-state parties. *Copley Triangle Associates v. Apparel America, Inc.*, 96 N.C.App. 263, 385 S.E.2d 201 (1989). That court appeared to apply North Carolina law to the piercing of the

Florida corporation. However, it never discussed the issue of choice of law, nor did it explain why it used North Carolina law. Therefore, the Court finds that this case is not applicable to the issues at hand and is not indicative of how the North Carolina Supreme Court would rule.

(1971) provides a reasonable basis for hypothesizing the law North Carolina would choose. *See generally Jefferson Pilot Broadcasting Co. v. Hilary & Hogan, Inc.,* 617 F.2d 133, 135 (5th Cir.1980). Section 307 of the *Restatement* states:

> The local law of the state of incorporation will be applied to determine the existence and extent of a shareholder's liability to the corporation for assessments or contributions and to its creditors for corporate debts.

The *Restatement* position, which applies the law of the state of incorporation, is supported by sound policy reasons. After all the state's primary purpose for permitting corporations to be formed is to allow for limited liability. It would seem then that "the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away." *Soviet Pan Am Travel Effort v. Travel Committee, Inc.,* 756 F.Supp. 126, 131 (S.D.N.Y.1991). Such a rule provides consistency and predictability to the corporation and its shareholders.[4] Not surprisingly, most, if not all, jurisdictions have adopted the *Restatement* position, and use the "internal affairs doctrine" as their choice of law for piercing the corporate veil. *See, e.g., Kalb, Voorhis & Co. v. American Financial Corp.,* 8 F.3d at 132–33; *Bagdon v. Bridgestone/Firestone, Inc.,* 916 F.2d 379, 382 (7th Cir.1990), *cert. denied,* 500 U.S. 952, 111 S.Ct. 2257, 114 L.Ed.2d 710 (1991) (citing *Paulman v. Kritzer,* 38 Ill.2d 101, 230 N.E.2d 262 (1967) (Illinois)); *Cascade Energy & Metals Corp. v. Banks,* 896 F.2d 1557, *cert. denied,* 498 U.S. 849, 111 S.Ct. 138, 112 L.Ed.2d 105 (1990); and, *In re Hillsborough Holdings Corp.,* 123 B.R. 1004, *aff'd,* 123 B.R. 1018 (M.D.Fla.1990). Finally, it is significant that North Carolina has adopted other portions of the *Restatement (Second) of Conflict of Laws* regarding choice of law in regard to contracts for the sale of goods. *See Terry v. Pullman Trailmobile,* 92 N.C.App. 687, 376 S.E.2d 47 (1989).

■ Accordingly, the Court finds that if the North Carolina Supreme Court were faced with a choice of law question for piercing the corporate veil, it would adopt the internal affairs doctrine and apply the law of the state of incorporation. In this case, Oberflex is incorporated in North Carolina, therefore, North Carolina law will apply to plaintiff's attempt to pierce its corporate veil.

■ North Carolina courts have recognized that the "'doctrine of the corporate entity may not be used as a means for defeating the public interest and circumventing public policy.'" *State ex rel. Util. Com'n v. Nantahala Power & Light Co.,* 313 N.C. 614, 332 S.E.2d 397, 462 (1985), *rev'd on other grounds,* 476 U.S. 953, 106 S.Ct. 2349, 90 L.Ed.2d 943 (1986) (quoting *State ex rel. Utilities Com'n v. Morgan,* 277 N.C. 255, 272, 177 S.E.2d 405, 416 (1970), *aff'd on rehearing on other grounds,* 278 N.C. 235, 179 S.E.2d 419 (1971)). The corporate form will be disregarded where necessary to prevent fraud or achieve equity. *Glenn v. Wagner,* 313 N.C. 450, 329 S.E.2d 326, 330 (1985). The paramount purpose of piercing the corporate veil is to prevent injustice. *Nantahala,* 332 S.E.2d at 465.

The North Carolina courts have adopted the instrumentality rule as the basis for disregarding the corporate entity or "piercing the corporate veil." *Glenn,* 329 S.E.2d at 330. It is an equitable doctrine that serves "to place the burden of the loss upon the party who should be responsible." *Id.* at 332.

> Focus is upon reality, not form, upon the operation of the corporation, and upon the defendant's relationship to that operation.... [The court will look to see whether] the corporate entity attacked had 'no separate mind, will or existence of its own' and was therefore the 'mere instrumentality or tool' of the dominant corporation.

*Glenn,* 329 S.E.2d at 332.

■ The burden is on the plaintiff to establish factors which would justify disregard-

---

4. Matters internal to a corporation's affairs, such as holding shareholders or directors personally liable, is a matter best left to the laws of one state. Otherwise, shareholders or the corpora-

tion could be faced with conflicting demands from various states. *Restatement (Second) of Conflict of Laws,* § 302 cmt. b.

ing the corporate entity. *Id.* at 333. The North Carolina Supreme Court has enumerated three elements which support piercing the corporate veil:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction[5] had at the time no separate mind, will or existence of its own; and

> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and

> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Glenn,* 329 S.E.2d at 330 (citing *B–W Acceptance,* 268 N.C. 1, 149 S.E.2d 570, 576 (1966)).

A number of activities have been cited as possible evidence of abuse or misuse of the corporate form through improper domination and control. They are:

> (1) inadequate capitalization,

> (2) non-compliance with corporate formalities, including the failure of the parent to recognize the subsidiary as a separate entity,

> (3) complete domination and control,[6]

> (4) excessive fragmentation,

> (5) non-payment of dividends,

> (6) insolvency of the debtor corporation,

> (7) siphoning of funds by the dominant shareholder,

> (8) non-functioning of other officers or directors, and

> (9) absence of corporate records.

*Glenn,* 329 S.E.2d at 332 (citing *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.,* 540 F.2d 681 (4th Cir.1976)); *see also* Russell M. Robinson II, *Robinson on North Carolina Corporation Law* § 2.10 (1990).

The presence or absence of any particular factor is not dispositive. *Glenn,* 329 S.E.2d at 332. What is required is "a combination of factors which, when taken together with an element of injustice or abuse of corporate privilege" show that the corporate entity was the mere instrumentality of the dominant corporation. *Id.*

■ The wrong or injustice for which the remedy may be invoked need not include fraud. *Nantahala,* 332 S.E.2d at 464. It is sufficient that the actions show an ulterior purpose to benefit the person in control in a way not possible or legal without misuse of the controlled corporation. The North Carolina courts have identified a number of acts which serve as a qualifying wrong or injustice when combined with excessive domination and control. They are: (1) operating the subsidiary so it had no assets to pay future debts, *Nantahala,* 332 S.E.2d 397; (2) unilaterally voiding contracts of the controlled corporation to the detriment of creditors, *Glenn,* 329 S.E.2d 326; (3) operating a subsidiary so that a finance company could evade the usury laws, *Henderson v. Security Mortg. & Finance Co.,* 273 N.C. 253, 160 S.E.2d 39 (1968); (4) failing to obtain required workers' compensation coverage for employees, *Postell v. B & D Construction Co.,* 105 N.C.App. 1, 12, 411 S.E.2d 413, 419, *rev. denied,* 331 N.C. 286, 417 S.E.2d 253 (1992); and, (5) depleting corporate assets to pay personal debts, *Atlantic Tobacco Co. v. Honeycutt,* 101 N.C.App. 160, 398 S.E.2d 641 (1990), *rev. denied,* 328 N.C. 569, 403 S.E.2d 506 (1991).

---

**5.** In *Glenn,* the court relaxed the transactional requirement for cases involving affiliated corporations, holding that the domination sufficient to disregard the corporate form will not, in compelling circumstances, be limited to the particular transaction attacked. *State ex rel. Util. Com'n v. Nantahala Power & Light Co.,* 313 N.C. 614, 332 S.E.2d 397, 464 (1985), *rev'd on other grounds,*

476 U.S. 953, 106 S.Ct. 2349, 90 L.Ed.2d 943 (1986) (explaining *Glenn v. Wagner,* 313 N.C. 450, 329 S.E.2d 326, 331 (1985)).

**6.** In North Carolina, it appears that a significant degree of control is always required to satisfy the mere instrumentality rule as stated in *Glenn,* 329 S.E.2d at 330, and *Nantahala,* 332 S.E.2d at 464.

■ Plaintiff has offered the following facts which, if believed, would tend to show misuse or abuse of Oberflex's corporate form by SIO. Plaintiff points to facts indicating complete domination or control by SIO over Oberflex. Oberflex was wholly owned and its finances and management controlled by SIO. (Califano Depo. at 7; Pleading No. 23, Ex. D, Interrog. No. 31) Oberflex and SIO had several of the same officers and directors. (Pleading No. 23, Ex. D, Interrog. No. 4) Defendant SIO allegedly failed to respect the corporate form of Oberflex because its employees oversaw Oberflex operations, and Oberflex employees reported to SIO's export manager. (Califano Depo. at 7) Also, SIO agents allegedly interfered with Oberflex's business judgment by holding themselves out as having the sole power to resolve the dispute between plaintiff and Oberflex. (*Id.* at Ex. E, Boyle Aff. at ¶¶ 8 and 10)

A jury might find possible excessive fragmentation if it believes that Oberflex's sole operation was the import and distribution of SIO products, and Oberflex acted as a mere conduit for SIO products to enter the United States and be distributed therein. Finally, plaintiff has presented evidence of insolvency or siphoning of corporate funds by virtue of the fact that after the dispute with plaintiff arose, SIO sold off all of Oberflex's assets so that presently it is simply a "shell" corporation without any function or assets. (Califano Depo. at 14; Pleading No. 23, Ex. D, Interrog. No. 14)

Viewing these facts in the light most favorable to plaintiff, there is sufficient evidence from which a jury might be able to find that SIO abused or misused the corporate form of Oberflex which amounts to or which results in a wrong or injustice. A jury might find injury because the sale of assets leaves Ober-

flex unable to respond to its liabilities, if any, to plaintiff. It may find that SIO interfered in Oberflex's business decision to resolve the dispute and thereby prevented a settlement. If so found, Oberflex would be a mere instrumentality of SIO. North Carolina courts will not allow a person to use a corporation to their benefit and to the injury of a third party and then hide behind the protection of the corporate form. They will look at the reality of how that corporation was operated to prevent injury to innocent parties. On this record, the Court cannot grant SIO's motion for summary judgment.

### Breach of Warranty and Privity

■ The remaining issue is whether plaintiff is allowed to maintain its cause of action for breach of implied warranties against SIO. North Carolina law requires privity of contract in order to recover for breach of implied warranties. *Gregory v. Atrium Door & Window Co.*, 106 N.C.App. 142, 415 S.E.2d 574 (1992). Because there was no privity of contract between plaintiff and SIO, under North Carolina law these claims for direct liability would fail.[7] However, Arkansas law does not require privity of contract in order to maintain these warranty claims. *Mack Trucks of Ark., Inc. v. Jet Asphalt & Rock Co.*, 246 Ark. 101, 437 S.W.2d 459 (1969). Therefore, the issue becomes which state's laws govern the transaction between plaintiff and Oberflex.

Defendant SIO contends that North Carolina law should be used because of a choice of law clause inserted into the invoice Oberflex sent to plaintiff. It argues that Oberflex's invoice constituted the contract. Plaintiff relies on *Southeastern Adhesives Co. v. Funder America, Inc.*, 89 N.C.App. 438, 366 S.E.2d 505 (1988), which applied the Uniform

---

7. Plaintiff contends that North Carolina may be moving away from requiring privity of contract. Relying on dicta from *Gregory v. Atrium Door & Window Co.*, 106 N.C.App. 142, 415 S.E.2d 574 (1992), plaintiff questions whether this Court should still require privity of contract. However, it is not the role of this Court to overrule North Carolina precedents, especially when the *Gregory* court was constrained by *stare decisis*. *See Sanderson v. Rice*, 777 F.2d 902, 905 (4th Cir.1985), *cert. denied*, 475 U.S. 1027, 106 S.Ct. 1226, 89

L.Ed.2d 336 (1986); *Harris v. Lukhard*, 733 F.2d 1075, 1082 (4th Cir.1984) (where highest state court "has not addressed the issue, a federal court should attribute some, but not controlling, weight to the state's lower court's interpretations...."). In addition, defendant SIO points to the later case of *Thrift v. Food Lion, Inc.*, 111 N.C.App. 758, 433 S.E.2d 481 (1993), *reversed on other grounds*, 336 N.C. 309, 442 S.E.2d 504 (1994), to demonstrate that North Carolina still requires privity of contract to maintain a claim of breach implied warranty of merchantability.

Commercial Code § 2–207(2), to show that plaintiff's purchase order, which chose Arkansas law, was merely a proposal for an additional term, and that it did not accept this term. However, this reasoning applies to Oberflex's clause as well.

The contract between plaintiff and Oberflex was initially an oral agreement, which has not been shown to contain a choice of law provision. When Oberflex sent the invoice, it proposed an additional term by including a choice of law clause. Plaintiff did the same when it inserted a choice of law provision in the purchase order.

The terms of the contract are controlled by N.C.Gen Stat. § 25–2–207. This statute provides:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

   (a) the offer expressly limits acceptance to the terms of the offer;

   (b) they materially alter it; or

   (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of the Act.

The choice of law provisions constitute a material alteration to the contract, and neither party accepted the other's offer to include the clause.[8] Therefore, the choice of law provisions did not become part of the contract between the parties. Accordingly, N.C.Gen.Stat. § 25–1–105 governs the choice of law issue.

■ Under N.C.Gen.Stat. § 25–1–105(1), when parties to a contract fail to agree on which state's laws shall apply, that section requires the application of North Carolina law to transactions which bear an "appropriate relation" to the state. North Carolina courts interpret this to mean the state with the "most significant relationship" to the contract. *Boudreau v. Baughman*, 322 N.C. 331, 368 S.E.2d 849 (1988).

There are few North Carolina cases which interpret the meaning of the "most significant relationship" test, and none employing the test in a warranty dispute that does not involve personal injury.[9] However, it is clear that the relevant factors for this case include: the place of contracting; the place of negotiation; the place of performance; the location of the subject matter of the contract; the domicil, residence, nationality, place of incorporation and place of business of the parties; and, protecting the justifiable expectations of the parties. *Terry v. Pullman Trailmobile*, 92 N.C.App. at 693, 376 S.E.2d at 50 (adopting *Restatement (Second) of Conflict of Laws* (1971)). In addition, North Carolina recognizes that a state has an interest in protecting its citizens from defective goods entering the state and in enforcing warranties; but, that "businesses [also] have a justifiable expectation that the law of the state where the

---

8. Nor did either party object to the other's choice of law clause. The two clauses are materially inconsistent with each other. Therefore, it is impossible to give effect to them both. Defendant SIO recognizes these principles in its reply brief, at pg. 4, with respect to plaintiff's choice of law clause. However, these principles apply equally to Oberflex's own clause.

9. When a personal injury is involved, the place of injury becomes very important, perhaps because the case begins to resemble a tort matter. *Terry v. Pullman Trailmobile*, 92 N.C.App. 687, 693, 376 S.E.2d 47, 50 (1989) (adopting *Restatement (Second) of Conflict of Laws* (1971)); *Boudreau v. Baughman*, 322 N.C. 331, 368 S.E.2d 849 (1988).

goods were sold and distributed will govern warranties they impliedly or expressly extend." *Id.* Similar cases in other jurisdictions are reasonably consistent in their interpretation of the "most significant relationship" test, and also provide some guidance in resolving this issue.

█ In choice of law disputes involving the sale of goods, the nature of the goods, injury and cause of action all dramatically affect the choice of law question. Here, North Carolina has several contacts with the instant transaction. Oberflex is a North Carolina corporation and the product was imported into the state before delivery to plaintiff. Most significantly, the contract called for "F.O.B. North Carolina," which means that the sale and delivery took place in North Carolina. (*See* n. 1, *supra*) When the only issue is payment for the goods, the Massachusetts Supreme Court has held that the place of delivery (i.e. F.O.B.) is generally the state with the most significant relationship. *Travenol Laboratories, Inc. v. Zotal, Ltd.*, 394 Mass. 95, 100, 474 N.E.2d 1070, 1074 (1985).[10] In so deciding, the court recognized that the *Restatement* provides for exceptions to the place of delivery rule, especially to protect the intentions or expectations of the parties. *Id.* However, because the case only involved a dispute over payment, it determined that no factor overrode the importance of the place of delivery, which it concluded also protected the justifiable expectations of the parties. *Id.*[11]

While the above facts show that North Carolina has some relationship to the controversy, they are not the "most significant" contacts. Given the type of Oberflex's operations, the dealings between the parties, the nature of the goods, and that the dispute involves warranties, the Court finds that Arkansas has the *most* significant contacts with this transaction. When the dispute arises over warranties covering the goods as opposed to mere payment for them, then factors such as the ultimate destination, place of use and the nature of the goods, and in a products liability case, the place of personal injury, become more important. *Boudreau v. Baughman*, 322 N.C. at 338–39, 368 S.E.2d at 856.

These other factors can outweigh the significance of the place of delivery. Thus, in *Threlkeld v. Worsham*, 30 Ark.App. 251, 785 S.W.2d 249 (1990), the Arkansas Supreme Court applied Arkansas law even though the contract stated that sale of the cattle would occur in Missouri. It found that Arkansas had the most significant relationship to the contract because of its interest in protecting its citizenry from the import of a defective product (diseased cattle), and because the injury from the defective product occurred in Arkansas. *Id.*, 785 S.W.2d at 253.

Likewise, the Oklahoma Court of Appeals has also found the place of delivery to be subordinate in a warranty case. *Collins Radio Co. v. Bell*, 623 P.2d 1039 (Okla.App. 1980). There, even though delivery occurred in Texas, it applied Oklahoma law because it determined that the contract contemplated a continuing relationship between the parties in Oklahoma. *Collins Radio*, 623 P.2d at

---

**10.** This decision mirrors the result if the court had followed the old rule of *lex loci delicti*, now replaced by the tests set out in the Uniform Commercial Code and the *Restatement (Second) of Conflict of Laws* §§ 6(2) and 188(2). *Boudreau v. Baughman*, 322 N.C. at 336, 368 S.E.2d at 854; *Terry v. Pullman Trailmobile*, 92 N.C.App. at 691, 376 S.E.2d at 49.

**11.** In *Travenol*, the court applied Massachusetts law, the place of delivery, only after it first analyzed whether another place had more significant contacts to the contract. *Travenol Laboratories, Inc. v. Zotal, Ltd., supra.* On the other hand, in *Quaker State Oil Refining Corp. v. Garrity Oil Co., Inc.*, 884 F.2d 1510 (1st Cir.1989), which was also a "payment" case, the First Circuit,

citing *Travenol* and the *Restatement,* held that Massachusetts had a more significant relationship when the dispute involved prejudgment interest in spite of the fact that the contract allegedly specified F.O.B. Pennsylvania. The court found that no party had substantial contacts with Pennsylvania, but that the defendant and the transaction had substantial contacts with Massachusetts. The invoices and product were sent to Massachusetts and also the product was resold there. The corporation receiving the product had its principal place of business and all of its assets and operations in Massachusetts. Finally, the loans covering the products were made in order to expand defendant's business in Massachusetts. *Id.* at 1515.

1048.[12] The parties knew that the product in question would be located and used in Oklahoma, which meant that continued contacts between the parties regarding the product would have to occur in Oklahoma. *Id.* Further, Colorado has also adopted the rule that place of delivery will not control when the contract contemplates a continuing relationship between the parties which will be centered in another state. *Richard O'Brien Companies v. Challenge–Cook Bros., Inc.,* 672 F.Supp. 466 (D.Colo.1987) (noting agreement with *Collins Radio* and citing the *Restatement*).

In the instant case, the dispute involves product warranties as opposed to mere nonpayment for the goods. Considering the relevant factors of the strength of ties of the business operations to their respective states; the place of sale, distribution and use of the product; and, the nature of the goods and the dispute; the Court finds that Arkansas has the most significant relationship to the transaction.

Oberflex not only has weak ties to North Carolina, but it is a business which looks outside of the state. It is wholly owned by a foreign corporation, and appears to be a vehicle for SIO to import its products to the United States so as to distribute them to wholesalers. Oberflex had only eight employees in North Carolina, and its national sales manager resided out-of-state and only came to North Carolina once a month. It does not manufacture any products within North Carolina. Additionally, it is significant that Oberflex never sold any products to a North Carolina business. Oberflex essentially conducts "business on a multinational scale and clearly should foresee the use of [its] products in any state within the nation." *Bernick v. Jurden,* 306 N.C. 435, 443, 293 S.E.2d 405, 410–11 (1982). These facts do not provide very strong support for applying North Carolina law to the transaction.

The contrary is true with respect to plaintiff's ties to Arkansas. Plaintiff is an Arkansas corporation which manufactures and sells products in Arkansas. In fact, the paneling Oberflex sold to plaintiff was used in two airplanes which were customized and sold in Arkansas. Arkansas has a strong interest in protecting one of its citizens, including corporations from the entry of defective products into the state, and in enforcing its warranties on products which enter the state. *See Terry v. Pullman, supra,* and *Threlkeld v. Worsham, supra.*

The particular or special facts of the transaction and the parties' relationship also favors using Arkansas law. Oberflex solicited business from an Arkansas corporation, and was fully aware that the product it sold would be used to produce a finished product in that state. The solicitation *by Oberflex* shows an expectation that the laws of Arkansas rather than North Carolina may apply to its sales and products.

Other facts are that Oberflex sold a specialty product for a very specific purpose, with a full awareness that most usage would be out-of-state. It further knew that any breach of warranty would likely occur and be discovered in Arkansas. When a business reaches out-of-state to distribute its goods, it should reasonably assume that another jurisdiction's laws will apply to warranty disputes. *See Terry v. Pullman, supra.* Here, Oberflex both solicited and distributed out-of-state. Therefore, it should reasonably expect that any continuing relationship involving disputes with plaintiff over warranties would most significantly involve Arkansas in spite of "F.O.B." delivery in North Carolina. *See Collins Radio Co. v. Bell, supra; Travenol Laboratories, Inc. v. Zotal, Ltd., supra;* and *Richard O'Brien Companies v. Challenge–Cook Bros. Inc., supra.*

█ Applying Arkansas law to plaintiff's claims for breach of warranty, it is clear that summary judgment is not proper. As indicated above, Arkansas does not require privity of contract to maintain these causes of action. Lack of privity was SIO's only ground for summary judgment on this issue. Consequently, its motion is denied.

**IT IS THEREFORE ORDERED** that defendant SIO's motion for summary judgment be, and the same hereby is, denied.

---

**12.** Cited with approval in *Boudreau v. Baugh-* *man,* 322 N.C. at 338, 368 S.E.2d at 855.