**UNITED STATES of America, Appellee,**
v.
**Edward Lester SCHRONCE,
Jr., Appellant.**

**No. 83–5089.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 4, 1983.

Decided Feb. 16, 1984.

Certiorari Denied May 21, 1984.
See 104 S.Ct. 2395.

William R. Vassar, Charlotte, N.C., for appellant.

Kenneth P. Andresen, Chief Asst. U.S. Atty., Charlotte, N.C. (Charles R. Brewer, U.S. Atty., Asheville, N.C., on brief), for appellee.

Before MURNAGHAN, SPROUSE and CHAPMAN, Circuit Judges.

---

SPROUSE, Circuit Judge:

Edward Lester Schronce appeals from his conviction for unlawful possession of an unregistered firearm and unlawful possession of an illegally manufactured firearm in violation of 26 U.S.C. § 5861(c) and (d) (1976). The firearm was an automatic rifle that had been converted from a semi-automatic rifle. He was convicted by a jury and sentenced by the court to a single term of three years' imprisonment (suspended), fined $3,000.00, and placed on three years' probation.

Schronce contends that evidence used against him at trial should have been suppressed because it was seized without a warrant in violation of the fourth amendment. He also claims that the district court abused its discretion (1) by admitting unauthenticated evidence, contrary to Rule 901(a) of the Federal Rules of Evidence, and (2) by allowing the government to present evidence that was irrelevant or, if relevant, was cumulative and prejudicial, in violation of Rule 403 of the Federal Rules of Evidence. We find no merit in the evidentiary issues Schronce presents and hold that he is precluded from raising the fourth amendment issue because of his failure to object to the magistrate's report recommending that his motion to suppress be denied. Schronce's fourth amendment claim appears meritless, but because his failure to file written objections is dispositive, we discuss only that issue.

On Saturday, May 23, 1981, the Gaston County Police Department had established a traffic checkpoint on Pine Street, Gastonia, North Carolina, after receiving complaints from area residents about reckless driving and sporadic shooting in the neighborhood. Early that morning, Detective Patrick Ramsey of the Gastonia County police force stopped a Pinto automobile there for a routine registration and license check. Schronce was a passenger in the Pinto. As the driver searched for her vehicle registration and driver's license, Detective Ramsey shone his flashlight into the back seat where he spotted a .45 caliber pistol and the barrel of what appeared to him, based on his experience with high-powered weaponry,[1] to be an AR–15 rifle protruding from underneath a jacket. Both weapons were in reach of Schronce, who was turned slightly sideways in the passenger seat towards the driver. Ramsey asked the driver to get out of the car and told her that he was going to take the weapons from the back seat to ensure his own safety and that of the five other officers in the vicinity. Once he had the AR–15 in hand, he observed that it appeared to have been altered to fire automatically. A functional check by the officer confirmed his suspicion—the rifle indeed had been converted from a semi-automatic to an automatic weapon. At this juncture, Schronce told Detective Ramsey that the AR–15 was his. Ramsey asked Schronce if there were any other weapons in the automobile; Schronce responded that he had a pistol in the glove compartment. Ramsey removed the pistol and arrested Schronce for carrying a concealed weapon. The issues on appeal relate only to his conviction for possession of the AR–15.

Before trial, Schronce filed a motion to suppress the AR–15 seized in the May 23, 1981 encounter at the traffic checkpoint. The district court referred the motion to a magistrate, who conducted an evidentiary hearing on March 11, 1983. At the hearing, Schronce challenged the seizure of the AR–15, arguing that it was not justified under either the "plain view" doctrine or the "exigent circumstances" exception to the fourth amendment's warrant requirement. The magistrate found that Ramsey seized the AR–15 out of a legitimate concern for his own safety and that of his fellow officers, and, having lawful custody of the weapon, had a right to examine it. In her written report to the district court, dated March 17, 1983, the magistrate made proposed findings of fact and conclusions of law, and

largest claims against the debtor of the kinds represented on such committee." Under the facts of this case, any refusal to appoint the appellant to the creditor's committee would be an abuse of discretion.

1. At the suppression hearing Ramsey testified that he was a Vietnam veteran and had extensive contact with AR–15's while in the service.

recommended that the motion to suppress be denied. She advised the parties that they had ten days to file written objections to the proposed findings of fact and conclusions of law. Schronce did not file any objections and in an order dated April 5, 1983, the district court found "[a]fter a careful review of the magistrate's Recommendation ... that the proposed findings of fact are supported by the record and that the proposed conclusions of law are consistent with current case law." Accordingly, the district court adopted the magistrate's recommendation and denied the motion to suppress.

The government's principal response to Schronce's fourth amendment argument is that the defendant is barred from challenging the magistrate's findings of fact and recommendations as approved by the district court, because he failed to file written objections within the ten-day period allotted by both the magistrate's written recommendation and the relevant statute, 28 U.S.C. § 636(b)(1).

Section 636(b)(1) of the Federal Magistrates Act [2] grants the district court authority to refer pre-trial matters, such as a motion to suppress, to a federal magistrate:

(A) [A] judge may designate a magistrate to hear and determine any pre-trial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

(B) [A] judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact, and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

(C) [T]he magistrate shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.

Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

The legislative history of the Federal Magistrates Act reveals that Congress intended to give magistrates a significant role in the federal judicial system. The Act's main purpose, as stated explicitly in the committee reports, was to relieve district courts of specified judicial chores that could be separated from their article III [3] responsibilities, in order to reduce increasingly unmanageable case loads. See *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc) (Unit B). Neither the legislative history of the Act nor § 636(b)(1) itself, however, specifically addresses the potential consequences a party will suffer if he fails to file the written objections authorized by the last paragraph of that subsection. We do not believe, though, that the Act can be interpreted to permit a party,

According to Ramsey, the AR-15 has a unique front sight mechanism on the end of the barrel that distinguishes it from other types of rifles.

3. U.S. Const. art. III.

2. 28 U.S.C. §§ 631–636.

such as Schronce, to ignore his right to file objections with the district court without imperiling his right to raise the objections in the circuit court of appeals. The Act's purpose and the framework Congress established to achieve that purpose would be defeated by such an interpretation. Litigants would have no incentive to make objections at the trial level; in fact they might even be encouraged to bypass the district court entirely, even though Congress has lodged the primary responsibility for supervision of federal magistrates' functions with that judicial body. Equally as troubling, the interpretation of § 636(b)(1) Schronce urges would impose a serious incongruity on the district court's decision-making process—vesting it with the duty to decide issues based on the magistrate's findings but depriving it of the opportunity to correct those findings when the litigant has identified a possible error. The same rationale that prevents a party from raising an issue before a circuit court of appeals that was not raised before the district court applies here.[4]

■ We are sympathetic to Schronce's argument that it is preferable to decide cases on their merits. Fair and orderly administration of the trial and appellate levels of our judicial system, however, does not require multiple consideration of every substantive issue a litigant raises and surrenders at earlier stages of the judicial proceeding. Schronce's arguments in this case would be more compelling if the posture of Schronce's appeal were caused by procedural ambush. That is not the case—the mag-

istrate's recommendation was adequate to apprise Schronce that timely objection was necessary in order for Schronce to perfect his right of review. The recommendation of the magistrate in this case concluded by stating that "written objections to the proposed findings of fact and conclusions of law and the recommendation for disposition of the motion to suppress . . . must be filed within ten (10) days after service . . . ." This language was mandatory and clearly alerted Schronce to his procedural obligations.

In these circumstances, Schronce waived his right to appellate review of his fourth amendment claim.

AFFIRMED.

MURNAGHAN, Circuit Judge, concurring:

Because the likelihood of success is so slim, should Schronce be allowed to obtain appellate review of the magistrate's determination that the guns seized should not have been suppressed, I concur, rather than dissent. The error, on the basis of a review of the record, appears harmless.[1] That makes unnecessary the reaching by my colleagues of the question whether Schronce "is precluded from raising the fourth amendment issue because of his failure to object to the magistrate's report recommending that his motion to suppress be denied." The question is a potentially serious one, on which decisions in other circuits have not been uniform.[2] It should be left

---

4. Five circuit courts of appeals have considered the question of whether, by failure to file an objection within ten days, a party waives the right to raise on appeal the issues decided by the magistrate. Four courts have decided with slight variations that the failure to object bars appellate consideration. *Nettles v. Wainwright,* 677 F.2d 404, 405, 410 (5th Cir.1982) (en banc) (Unit B); *United States v. Walters,* 638 F.2d 947, 950 (6th Cir.1981); *McCall v. Andrus,* 628 F.2d 1185, 1187 (9th Cir.1980), *cert. denied,* 450 U.S. 996, 101 S.Ct. 1700, 68 L.Ed.2d 197 (1981); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir. 1980). Only one circuit has reached the opposite conclusion. *Lorin Corp. v. Goto & Co., Ltd.,* 700 F.2d 1202 (8th Cir.1983). Some of

these decisions, including *Lorin,* emphasized that in order for a failure to object to constitute a waiver, it must be evident on the face of the magistrate's report that objections must be filed within ten days.

1. The majority concludes that the fourth amendment claim in all events was, or appears to have been, meritless.

2. The majority counts the decisions as five upholding their position, with one, the most recently decided, *Lorin Corp. v. Goto & Corp. Ltd.,* 700 F.2d 1202 (8th Cir.1983), going the other way. *Cf. Johnson v. Boyd-Richardson,* 650 F.2d 147, 149 (8th Cir.1981) (failure to comply with local rule requiring party to re-

undecided until a case arises in which the person in Schronce's position has more to gain by arguing the point, *i.e.*, when the magistrate may very well have been in error. Otherwise, we may live to rue an unnecessary decision made when the litigant had no reason to argue especially vigorously or to brief the point exhaustively.

spond to motion to dismiss in five days does not result in dismissal).

However, valid distinctions may be drawn with respect to those five cases. For example, in *United States v. Walters,* 638 F.2d 947, 950 (6th Cir.1981), the court, significantly, applied the rule only prospectively, "because rules of procedure should promote, not defeat the ends of justice." In *McCall v. Andrus,* 628 F.2d 1185 (9th Cir.1980), *cert. denied,* 450 U.S. 996, 101 S.Ct. 1700, 68 L.Ed.2d 197 (1981), the failure to object did not occur, as here, before the magistrate only, but rather extended to the opening brief in the appellate court. Schronce, however, clearly objected quite vigorously to admission of the weaponry at the pretrial suppression hearing.

In *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir.1982) (*en banc*) (Unit B), the Fifth Circuit suggested that for a waiver to be effective, the magistrate should use the following explicit terms: "Failure to file written objections to the proposed findings and recommendations con-

tained in this report within ten days ... shall bar an aggrieved party from attacking the factual findings on appeal." In the instant case, while Schronce was notified that he had to file written objections within 10 days, nothing was explicitly stated regarding a waiver in case of a failure to do so. Also, under the *Nettles* decision, only findings of fact, not conclusions of law, were expressly insulated from attack by a failure to observe the 10-day filing requirement. Furthermore, *Nettles* emphasized that failure to object at the district level constituted adequate reason to prohibit a party from initially raising objections on appeal; again, Schronce did vigorously seek in lower court proceedings to contest the refusal to suppress.

Finally, *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980), upheld the 10-day filing rule, but did so in the context of a civil dispute arising under a franchise agreement, as opposed to the criminal conviction at issue in Schronce's case.