PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

GEORGE FRANKLIN PAGE,
        *Petitioner-Appellant,*

v.

R. C. LEE, Warden, Central Prison,
        *Respondent-Appellee.*

No. 02-23

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
James A. Beaty, Jr., District Judge.
(CA-99-1060-1)

Argued: February 27, 2003

Decided: July 28, 2003

Before LUTTIG, WILLIAMS, and GREGORY, Circuit Judges.

---

Affirmed in part and dismissed in part by published opinion. Judge
Luttig wrote the opinion, in which Judge Williams joined. Judge
Gregory wrote an opinion concurring in the judgment.

---

## COUNSEL

**ARGUED:** Walter Lamar Jones, CLIFFORD, CLENDENIN,
O'HALE & JONES, L.L.P., Greensboro, North Carolina, for Appel-
lant. Valerie Blanche Spalding, Special Deputy Attorney General,
NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North
Carolina, for Appellee. **ON BRIEF:** William G. Causey, Jr., High
Point, North Carolina, for Appellant. Roy Cooper, Attorney General

of North Carolina, NORTH CAROLINA DEPARTMENT OF JUS-
TICE, Raleigh, North Carolina, for Appellee.

---

**OPINION**

LUTTIG, Circuit Judge:

Petitioner-appellant George Page challenges the validity of his con-
viction and death sentence, imposed by a North Carolina court for the
shooting death of a North Carolina police officer. He claims that the
state trial court erred by denying his request for appointment of a
mental health expert, in violation of the Due Process Clause as eluci-
dated in *Ake* v. *Oklahoma*, 470 U.S. 68 (1985), and by denying his
request to interview jurors during voir dire as to their understanding
of the concept of "life without parole," in violation of principles
established in *Kelly* v. *South Carolina*, 534 U.S. 246 (2002), and *Sim-
mons* v. *South Carolina*, 512 U.S. 154 (1994). As no judge on the
panel believes that petitioner has made a substantial showing of the
denial of a constitutional right as to his *Simmons* claim, no certificate
of appealability on this claim is issued, and the appeal as to that issue
is dismissed. *See* 28 U.S.C. § 2253(c)(1). We do grant a certificate of
appealability on petitioner's *Ake* claim. We conclude, however, that
the district court did not err in rejecting that claim, and therefore
affirm its judgment as to that issue.

I.

The relevant facts underlying petitioner's conviction for first
degree murder and related other crimes are succinctly set forth in the
North Carolina Supreme Court's opinion affirming petitioner's con-
viction and sentence on direct appeal:

> [A]t around 8:00 a.m. on 27 February 1995, Sandra
> McGill was sitting in her apartment when she heard a loud
> explosion coming from the bar counter. Because she was
> blind, McGill called maintenance personnel, who discovered
> that a bullet had gone through her fish tank. The shot was
> fired by defendant George Franklin Page, who was pointing

a high-powered rifle out the window of his apartment directly opposite McGill's building. He fired another shot when the maintenance person, Ellis Hollowell, went outside to take a closer look at a hole in the vertical blinds; this shot hit the wall just above Hollowell's head. Shortly after 9:00 a.m. defendant fired a third shot into a moving vehicle, a cable van.

Police Officers E.A. Newsome, A.N. Swaim, M.R. Bollinger, and J.W. McKenzie of the Winston-Salem Police Department arrived after 9:00 a.m. to inspect McGill's apartment. While Swaim and Newsome were proceeding to defendant's building to question the residents, defendant fired two more shots. While the officers radioed for help, he again fired his rifle, and the officers all took cover. Several testified that they saw defendant moving from window to window.

Officers John Pratt and Stephen Amos arrived at the scene and drove directly to defendant's building. Amos was at the hood of the car when defendant fired another shot that went through the patrol car's back window, then hit Amos in the chest. Pratt, along with officer Steven Sigmon and others, arrived and took Amos to the ambulance. Sigmon testified that he saw the muzzle flash and heard a shot that passed ten feet above his head.

Around 9:30 a.m. defendant called his ex-girlfriend, Tamara Mitchell, and stated that his apartment was surrounded by police officers and that he thought he had shot someone. At 10:00 a.m. Sergeant Marble, a crisis negotiator, called defendant. After discussion, defendant said he wanted to speak with his clinical psychologist, Dan Pollock, and his psychiatrist, Jason Crandell. Pollock spoke with defendant and implored him to surrender. . . . Negotiations continued until 11:45 a.m. when defendant agreed to go, without weapons, with Crandell and Marble to Pollock's office. Defendant was taken into custody shortly thereafter.

*State* v. *Page*, 346 N.C. 689, 693-94 (1997).

Petitioner was, for some time before and after the offense, being treated by both a psychiatrist and a psychologist for various disorders. At a pre-trial hearing on March 7, 1996, petitioner, according to the North Carolina Supreme Court, "moved for appointment of a third expert, a forensic psychiatrist, arguing that this type of expert was better equipped than a clinical psychologist to prepare a legal defense." *State* v. *Page*, 346 N.C. at 696. There was no dispute that petitioner's sanity at the time of the offense would be an issue at trial. The trial court, however, denied this motion. It noted that petitioner was being treated by two mental health specialists (a psychiatrist and a psychologist), that these specialists were available to aid petitioner, and thus that there was no need for a third such expert. On direct appeal, petitioner "contend[ed] that the trial court erred in providing the State with access to a forensic psychiatrist while denying his request for the same type of expert." *Id*. The North Carolina Supreme Court concluded, applying North Carolina's interpretation of *Ake*, that, "[g]iven the facts before the trial court when it made its ruling," petitioner "did not demonstrate a particularized need for a forensic psychiatrist or a reasonable likelihood that such an expert would materially assist him in the preparation and the presentation of his case." *Id*. at 697. Thus, the North Carolina Supreme Court held that the trial court did not err, and it affirmed petitioner's conviction and sentence.

Petitioner then brought his petition for a writ of habeas corpus in federal district court, again raising his *Ake* claim. The district court concluded that the North Carolina Supreme Court's adjudication of the claim was neither contrary to nor an unreasonable application of *Ake*, and denied the petition. Petitioner thereafter moved for a certificate of appealability with this court. Because Judge Gregory concluded that, as to this issue, petitioner made a substantial showing of the denial of a constitutional right, we issue a certificate of appealability on petitioner's claim under *Ake*. And we now address the merits of that claim.

## II.

### A.

As the petition for writ of habeas corpus in this case was filed on December 3, 1999, after the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, AEDPA applies to the federal courts' adjudication of petitioner's claim. *See Beck* v. *Angelone*, 261 F.3d 377, 380 n.3 (4th Cir. 2001). In particular, since the North Carolina Supreme Court addressed the merits of petitioner's *Ake* claim on direct appeal, 28 U.S.C. § 2254(d) applies.[1] Section 2254(d) bars the granting of habeas relief upon any claim adjudicated on the merits in state court unless the petitioner can show that the state court's decision was either "contrary to" or involved an "unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or an "unreasonable determination of the facts" given the evidence before the state court.

### B.

#### 1.

In *Ake* v. *Oklahoma*, the Supreme Court addressed "whether the Constitution requires that an indigent defendant have access to the psychiatric examination and assistance necessary to prepare an effective defense based on his mental condition, when his sanity at the time of the offense is seriously in question." 470 U.S. at 70. The defendant in that case, Ake, was arrested and charged with murdering two individuals and wounding their children. Although his behavior at the arraignment was "so bizarre that the trial judge, *sua sponte*, ordered him to be examined by a psychiatrist" to determine whether

---

[1]Petitioner also brought his *Ake* claim in his post-conviction Motion for Appropriate Relief in North Carolina court. The North Carolina court rejected this claim on the basis of N.C.G.S. § 15A-1419(a)(2), concluding that the claim had already been resolved on direct appeal. We have previously noted that N.C.G.S. § 15A-1419(a)(2) is not a state procedural bar that prevents federal habeas review of the claim. *See Smith* v. *Dixon*, 996 F.2d 667, 674 n.10 (4th Cir. 1993).

he needed to be committed, *id.* at 71, the trial court denied his attorney's request for the appointment of a psychiatrist to aid the defense. At trial, Ake attempted to use the testimony of the state psychiatrists who had treated him in the hospital to establish his insanity defense, but the prosecution "asked each of these psychiatrists whether he had performed or seen the results of any examination diagnosing Ake's mental state at the time of the offense, and each doctor replied that he had not. *As a result, there was no expert testimony for either side on Ake's sanity at the time of the offense.*" *Id.* (emphasis in original). The prosecution used this testimony in the sentencing phase as well, to establish Ake's future dangerousness. The jury convicted Ake and imposed a death sentence.

On appeal, Ake challenged as a violation of due process the court's refusal to provide a court-appointed psychiatrist. The Supreme Court sustained the challenge: "We therefore hold that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." *Id.* at 83. The Court had no trouble determining that Ake had established to the trial court that his mental state at the time of the offense would be a substantial factor in his case, and thus concluded that Ake was entitled to the assistance of a psychiatrist. *See id.* at 86-87.

Subsequent to the Supreme Court's decision in *Ake*, the North Carolina Supreme Court set forth the appropriate test by which trial courts in that state are to determine whether expert witnesses should be appointed. Under that test, "[i]n order to make a threshold showing of specific need for the expert sought, the defendant must demonstrate that: (1) he will be deprived of a fair trial without the expert assistance, or (2) there is a reasonable likelihood that it will materially assist him in the preparation of his case." *State* v. *Moore*, 321 N.C. 327, 335 (1988). "In determining whether the defendant has made the requisite showing of his particularized need for the requested expert, the court 'should consider all the facts and circumstances known to it at the time the motion for psychiatric assistance is made.'" *Id.* at 336 *(quoting State* v. *Gambrell*, 318 N.C. 249, 256 (1986)). This test

was applied by the North Carolina Supreme Court in evaluating petitioner's *Ake* claim on direct appeal. *See Page*, 346 N.C. at 696-97.

North Carolina's test, considered in the abstract, is surely a reasonable interpretation of *Ake*. *Ake* does not mandate that the trial court be omniscient, nor does it require the trial court to divine without direction what expert the defendant wishes, nor why such an expert is needed. The phrase within the holding of *Ake* "assure the defendant access to a competent psychiatrist" is of particular significance. If it appears to the trial court that the defendant already has access to a competent psychiatrist who can assist the defense, it follows that such access has been "assure[d]," and thus that the State need do no more. It is thus not unreasonable to conclude, as has the Eleventh Circuit, that "a defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial." *Moore* v. *Kemp*, 809 F.2d 702, 712 (11th Cir. 1987). Or, phrased another way, *Ake*, reasonably read, permits the dispositive inquiry on appellate review to be, "having heard petitioner's explanation, should the trial judge have concluded that unless he granted his request petitioner would likely be denied an adequate opportunity fairly to confront the State's case and to present his defense?" *Id.* at 710. This formulation of the question facing a reviewing court is consistent with North Carolina's approach to handling the appointment of expert witnesses to indigent defendants.

As the North Carolina Supreme Court has formulated a legal test that represents a reasonable reading of *Ake*, we now turn to the North Carolina Supreme Court's application of this test to the case before us.

2.

Petitioner has presented to this court what can be understood as two distinct arguments, one, that *Ake* mandates that petitioner have access to a *forensic* mental health expert (as opposed to a nonforensic expert) when a defendant has shown that his sanity will be a significant factor at the trial, and two, that the availability of Drs. Crandell and Pollock to testify for petitioner did not satisfy the State's duty under *Ake* to provide access to a mental health expert, as the two

experts could not or would not perform all the tasks (including the non-testimonial tasks) required of a court-appointed defense expert witness, as envisioned by North Carolina's interpretation of *Ake*.[2] *See Gambrell*, 318 N.C. at 259 (defense mental health expert witness will "assist[ ] defendant in evaluating, preparing, and presenting his defense in both the guilt and sentencing phases"). For the reasons that follow, neither of these arguments is availing to petitioner.[3]

---

[2]Petitioner did not make this second argument, nor anything approximating this argument, to the North Carolina Supreme Court, as an examination of his brief to that court reveals. *See* Def-App's Brief, Rec. on App. Vol. 6, Ex. C, at 6-15 (contending only that petitioner's expert witnesses were incompetent because, one, Dr. Pollock was easily impeachable, and two, that neither witness was forensically trained).

[3]A magistrate judge was assigned to petitioner's case when it was before the federal district court. Within ten days of submission of the magistrate judge's recommendation, petitioner filed his objections to the magistrate judge's recommendation. The sum total of petitioner's written objections to the recommendation of the magistrate judge was as follows:

> Now comes petitioner, by and through undersigned counsel, who respectfully objects to the recommendations of the United States Magistrate Judge as required by Rule 72(b) of the Federal Rules of Civil Procedure.

> As undersigned counsel is unaware of any new authority for the issues raised in the brief in support of the habeas petition counsel relies on the argument presented in that brief.

> Respectfully submitted this the 14th day of March, 2002.

Pet.'s Objections to Recomm. of Magis. Jud., Rec. on App. Vol. 1, Document No. 20.

Federal Rule of Civil Procedure 72 (b) states that, "[w]ithin 10 days after being served with a copy of the recommended disposition, a party may serve and file *specific*, written objections to the proposed findings and recommendations." (emphasis added). Petitioner obviously did not satisfy the requirement of this Rule. As we have long held, the failure to raise objections to a magistrate judge's recommendations waives the right to appellate review. *See United States* v. *Schronce*, 727 F.2d 91, 93-94 (4th Cir. 1984). Although not yet specifically addressed by our circuit in a published opinion, other circuits have held that the failure to raise an objection "sufficiently specific to focus the district court's attention

The first of these arguments is easily dismissed. *Ake* speaks only of the aid of a "competent psychiatrist," not a "forensic" psychiatrist. There is no suggestion in *Ake* that a non-forensic psychiatrist is "incompetent" for purposes of aiding a defendant in preparing a defense in which one's sanity is at issue. Nor is it true that, as a matter of fact, a non-forensic mental health expert is categorically "incompetent" to assist a defendant. It is not unreasonable at all, then, to conclude that *Ake* does not require a forensic psychiatrist, provided that the mental health expert to which the defendant does have access is otherwise "competent." Indeed, this is the only plausible reading of *Ake*.

Thus, because petitioner does not point to any evidence in the record tending to show that Drs. Crandell and Pollock fell below this standard of competency, the North Carolina Supreme Court's refusal to hold that the trial court erred in denying petitioner's request for a forensic mental health expert is clearly a reasonable application of *Ake*.

The second argument is equally unavailing. As to this argument, we need only look to the pre-trial hearing wherein the motion was addressed and decided, to identify the arguments made to the court by petitioner and the composite of information that was before the trial court when it ruled on the motion for appointment of the additional mental health expert.

At that hearing, the prosecutor initiated the discussion on the motion for appointment with the following:

---

on the factual and legal issues that are truly in dispute" waives any appellate review. *United States* v. *2121 E. 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). In particular, a general objection of the kind advanced by petitioner is insufficient to avoid waiver. *See id.*; *Howard* v. *Secretary of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *Lockert* v. *Faulkner*, 843 F.2d 1015, 1019 (7th Cir. 1988) ("Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review."); *Goney* v. *Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). Although, for the reasons that appear, petitioner's arguments are unavailing, petitioner's failure to object to the magistrate judge's recommendation with the specificity required by the Rule is, standing alone, a sufficient basis upon which to affirm the judgment of the district court as to this claim.

> The final motion that we want to hear today is a motion by the defendant for a court to appoint a psychiatrist and/or psychologist to assist them and I will just let Mr. Eubanks [petitioner's trial counsel] be heard. . . . He further has the services of a private doctor, Dr. Jason Crandell, who's treated him for over a year, and Dr. Dan Pollock, who's a psychologist who I understand sees him practically every week in the jail, although he's not appointed and I'm not sure whether he's qualified to testify in court.

J.A. 201-202. Based upon this representation by the prosecution, it is unquestionable that the trial court understood that petitioner already "ha[d] the services of a private doctor" and "a psychologist" who "sees him practically every week in the jail."

A short time later, petitioner's trial counsel explained that the motion for the additional appointment was made because it was believed that petitioner's two treating mental health experts would not be "totally independent and impartial," because the State intended to call them as witnesses:

> Your Honor, Mr. Page — our information — the State is using certain medical witnesses, I take it, to already have them available. Dr. Crandell and Pollock have been — well, it appears to me they will be State's witnesses already. For that reason, we believe we need the assistance of a psychologist and psychiatrist independent of either of those people to review the medical records, which consists of boxes of stuff, Judge, and advise us on what — you know, what their findings might be. We would like to have somebody totally independent and impartial.

J.A. 202.[4] The third mental health expert was necessary, said trial

---

[4]Of course, the mere fact that an expert might be called by the State as a fact witness does not render him or her partial or "beholden to the prosecution" as that term is used in *Ake*. 470 U.S. at 85; *see* J.A. 206 (prosecutor mentioning that State would possibly call both doctors as they observed events surrounding the offense). A mental health expert is

counsel, to "advise [petitioner] on what . . . their findings might be" after "a review of the medical records." Petitioner's counsel did not take any exception to the prosecutor's statement that petitioner had available the services of two mental health experts.

Later in the hearing, and tellingly, the following exchange occurred:

THE COURT: I'm trying — in other words, it's one thing if you have no psychiatric witness or no psychological witness and want one, but I get the distinct impression here that you know of at least one psychiatrist and one psychologist who — that the defendant intends to call or that paragraph five wouldn't be in this motion.

MR. EUBANKS: *That's — all that's true.*

THE COURT: *And, in essence, what you're asking me to do is appoint another one.*

MR. EUBANKS: *Yes.*

J.A. 204 (emphasis added). At this point, again, it would appear to a reasonable mind that the defendant was requesting a third expert who would perform no tasks beyond those that were to be performed by petitioner's first two mental health experts.

At the conclusion of petitioner's presentation, the trial court specifically asked both parties if either had anything to add (thus giving

_____

expected, amongst other tasks, to present testimony, to advise the defendant's attorney as to the viability of the insanity defense, and to assist in preparation of cross-examination of State experts. *See Ake*, 470 U.S. at 82. None of these functions are inhibited if the expert in question also happens to have observed some fact relevant to the case, independent of his or her expert status.

petitioner yet another opportunity to present new arguments or to object to anything the prosecutor or the court had said), to which petitioner's counsel stated "No, sir." J.A. 206. Given this total of information, the trial court concluded:

> Based upon the information brought out in argument and the official records in this case, the Court finds the following facts:
>
> Number one, the defendant has available to him at this time a psychiatric witness, to wit . . . Dr. Jason Crandell, who was privately retained by the defendant and who has been treating the defendant over an extended period of time long before the present charges arose. No psychiatric witness — no other psychiatric witness is in a better position to evaluate the defendant than his own psychiatrist who has been examining him and treating him over an extended period of time prior to this moment.
>
> Next number, the defendant in a similar manner has had the services of . . . Dr. Dan Pollock, a psychologist . . . who has been privately retained by the defendant and has been . . . evaluating the defendant over an extended period, approaching nine years, prior to this moment. There is no psychologist in a better position to have evaluated the defendant than is Dr. Pollock, who is readily available.
>
> . . .
>
> The next number, it is apparent from the defendant's own documents that he has available at this very moment a psychiatric witness and a psychological witness who have treated the defendant over a long period of time and are familiar with his mental and physical condition.
>
> Next number, the defendant has failed to demonstrate to the Court's satisfaction the need for yet another psychiatric witness or another psychological witness when it is apparent to the Court that he has readily available to him at this time

both a psychiatrist and a psychologist who have treated him over a long period of time and are familiar with his mental state for some period of time prior to the fatal encounter and prior to the trial of this action.

J.A. 207-08. At no point did petitioner object to any part of the court's findings, nor did he at any point present information contrary to this finding and conclusion by the trial court.

To summarize, then, the trial court had before it a motion for the appointment of a mental health expert, when petitioner already had the actual and current assistance of two mental health experts, and the only reason given by petitioner for why those two experts would be insufficient was that the State would perhaps call them as fact witnesses.

Petitioner did not contend (and does not now) that *Ake* requires the appointment of a mental health expert by the State regardless of whether the defendant has mental health experts, undoubtably because *Ake* cannot possibly be read to require such. *Ake* does not require the "appointment" of a mental health expert; it requires only that the State "assure the defendant access to a competent [mental health expert]" who will assist the defense. And this, only where the defendant does not otherwise have a mental health expert who can assist him.

Additionally, despite numerous opportunities to do so, petitioner did not suggest in any way to the trial court that the two experts would be unable to assist him in his defense, nor did he argue that Drs. Pollock and Crandell should be, or needed to be, paid by the State. Petitioner also did not suggest that the purpose for the requested appointment was to provide any assistance that would not be provided by Drs. Pollock and Crandell, and specifically, neither did he contend that he needed a forensic mental health expert in particular.[5]

---

[5]Until this very appeal, in fact, petitioner has pointed to no evidence in the record that Drs. Pollock and Crandell did not act as the defense experts that North Carolina contemplates they should, as required under *Ake*. Even the simplest form of evidence, such as an affidavit on this point from either expert, from trial counsel, or from petitioner himself is absent from the record.

As it was entirely reasonable for the trial court, after "having heard petitioner's explanation," to conclude that petitioner would not "likely be denied an adequate opportunity fairly to confront the State's case and to present his defense," *Moore* v. *Kemp*, 809 F.2d at 712, were the requested motion to be denied, the North Carolina Supreme Court's holding that the trial court did not err in its denial of petitioner's motion for appointment of a third mental health expert neither constitutes an unreasonable application of *Ake* nor is contrary to that decision, the relief sought by petitioner is barred under 28 U.S.C. § 2254(d).[6]

## *CONCLUSION*

Petitioner's request for a certificate of appealability on his *Ake* claim is granted, and his request for a certificate of appealability on his *Simmons* claim is denied. The judgment of the district court as to petitioner's *Ake* claim is affirmed, and the appeal from the district court's denial of petitioner's *Simmons* claim is dismissed.

### *AFFIRMED IN PART, DISMISSED IN PART*

GREGORY, Circuit Judge, concurring in the judgment:

I concur with the majority's conclusion that petitioner has failed to demonstrate that the state court's rulings were "contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C.A. § 2254(d)(1) (West 2003); *Williams* v. *Taylor*, 529 U.S. 362, 402-03 (2000). I write separately to emphasize the requirements of *Ake v. Oklahoma*, 470 U.S. 68, 82 (1985).

---

[6]Given this conclusion, we do not need to address whether, even if the burden of 28 U.S.C. § 2254(d) could be overcome, petitioner has shown that any constitutional error that did occur had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht* v. *Abrahamson*, 507 U.S. 619, 638 (1993); *see Tuggle* v. *Netherland*, 79 F.3d 1386, 1392-93 (4th Cir. 1996) (applying *Brecht* harmless error standard to *Ake* errors).

Under *Ake*, "the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." *Ake*, 470 U.S. at 83. The Supreme Court emphasized that assisting in the preparation of a defense includes, but is not limited to: 1) examining the defendant; 2) testifying on his behalf; 3) helping determine the viability of an insanity defense; and 4) assisting in the preparation of the cross-examination of the State's psychiatric witness. *Ake*, 470 U.S. at 82.

Because the State must "assure" a defendant has access to a mental health expert, we must consider all relevant factors to determine whether such access has been assured. The mere presence of one or multiple mental health experts does not satisfy *Ake*. *See*, *e.g.*, *United States v. Crews*, 781 F.2d 826 (10th Cir. 1986) (finding that a defendant was entitled to the appointment of a psychiatrist, despite the fact that he was examined by four treating or court-appointed psychiatrists, all of whom testified to his mental condition). Regardless of whether a defendant has access to one or multiple mental health experts, when those experts cannot individually or collectively fulfill, at a minimum, the duties contemplated by *Ake*, it is the State's responsibility to provide the defendant with a mental health expert who can provide the requisite assistance. Here, petitioner alleges that he did not receive the assistance of a mental health expert as required by *Ake*, but fails to show how his existing mental health experts were unable to satisfy *Ake*'s requirements. Because there is no evidence in the record demonstrating that petitioner's mental health experts could not provide the requisite assistance, I concur in the majority's decision.