PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

NICHOLAS OMAR MIDGETTE,
            *Defendant-Appellant.*

No. 05-4765

Appeal from the United States District Court
for the Eastern District of North Carolina, at New Bern.
Louise W. Flanagan, Chief District Judge.
(CR-04-54)

Argued: October 27, 2006

Decided: February 26, 2007

Before NIEMEYER, TRAXLER, and SHEDD, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Traxler and Judge Shedd joined.

## COUNSEL

**ARGUED:** Devon L. Donahue, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, Raleigh, North Carolina, for Appellant. Frank D. Whitney, United States Attorney, Anne M.

Hayes, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

**OPINION**

NIEMEYER, Circuit Judge:

While Nicholas Omar Midgette was on probation for two North Carolina criminal convictions, New Bern city police officers, under the direction and supervision of Midgette's probation officer, conducted warrantless searches for contraband of his person, vehicle, and house. The police officers found three firearms, ammunition, and marijuana. Based on this evidence, Midgette was indicted by a federal grand jury for possession by a convicted felon of firearms, possession of an unregistered firearm, and possession of marijuana.

Midgette filed a motion to suppress the evidence, contending that the searches were unreasonable under the Fourth Amendment because (1) even though Midgette was a probationer, the State still did not have "reasonable suspicion" that Midgette possessed any contraband, and (2) the search did not conform to North Carolina law, which authorized the probation officers, but not police officers, to conduct warrantless searches of probationers. After a magistrate judge made proposed findings of fact and recommendations to reject both of Midgette's arguments, Midgette filed timely objections to the magistrate judge's report, but his objections were based only on his second argument that the searches did not comport with North Carolina's probation law. The district court overruled Midgette's objections and denied his motion to suppress. Midgette then pleaded guilty pursuant to a plea agreement to one firearms count, reserving his right to appeal the suppression order.

On appeal, Midgette challenges the district court's order denying his motion to suppress, arguing that the searches violated the Fourth Amendment because (1) North Carolina's probation scheme, under which the searches were executed, allows warrantless searches without requiring "reasonable suspicion"; (2) the probation officer did not have a reasonable suspicion that Midgette possessed contraband; and

(3) the probation officer did not comply with North Carolina law, which authorizes only probation officers, not police officers, to conduct warrantless searches of probationers.

Because the police officers' searches were conducted under the direction and supervision of Midgette's probation officer, we conclude that they did not violate North Carolina law. Because Midgette failed to present his other arguments regarding the constitutionality of the North Carolina probation law and the lack of reasonable suspicion to the district judge as objections to the magistrate judge's report, we conclude that he waived his right to appeal those issues. Moreover, they fare no better on the merits. Accordingly we affirm.

I

On January 14, 2004, Midgette pleaded guilty to the North Carolina offense of resisting a public officer and was sentenced to 30 days' imprisonment, which was suspended, and to 36 months of supervised probation. One month later, on February 18, 2004, Midgette pleaded guilty to a 2003 North Carolina felony offense for possession of marijuana and was sentenced to a three-month term of imprisonment, again suspended, and to 12 months of supervised probation. Under the terms of probation imposed in connection with each offense, Midgette was required to refrain from possessing a firearm; to retain employment or pursue training for employment; to remain within the jurisdiction of the court unless granted written permission to leave; to report regularly to a probation officer and permit the officer to visit him at reasonable times; and to notify the probation officer of any change in address or employment. Midgette was also subjected to special conditions requiring him to abstain from possessing or using illegal drugs; to submit to drug testing; and to "submit at reasonable times to warrantless searches by a probation officer of the defendant's person, and of the defendant's vehicle and premises while the defendant is present, for the purposes which are reasonably related to the defendant's probation supervision."

On March 22 or 23, 2004, Midgette's probation officer, Tammy Edwards, was informed by Sergeant Willie Wilcutt of the New Bern, North Carolina Police Department that Midgette might be in possession of a firearm. Sergeant Wilcutt pointed out that Midgette had a

reputation for carrying firearms and had retrieved firearms from the New Bern Police Department in July 2003. Probation Officer Edwards thereafter asked police officers to assist her in searching Midgette during his upcoming meeting with her.

Midgette reported to Probation Officer Edwards at her office for a regularly scheduled meeting on March 24, 2004. As Edwards had requested, two New Bern police officers attended the meeting and searched Midgette in Edwards' presence, but they found no contraband. Edwards then asked the officers to search Midgette's vehicle. Again in the presence of Edwards and Midgette, the officers searched Midgette's vehicle, where they found, in the glove compartment, a pistol magazine containing ten rounds of .40 caliber ammunition. Because of what was discovered, Probation Officer Edwards decided that "it probably would be a good idea to search [Midgette's] house." The parties drove to Midgette's residence where, before entering the house, one of the officers asked Midgette whether there were any firearms inside. Midgette told the officers that there was a firearm on top of his dresser and "the rest of the weapons" were in his bedroom closet. Under Probation Officer Edwards' direction and in Midgette's presence, the police officers searched Midgette's room and recovered a loaded .20 gauge shotgun, a loaded sawed-off shotgun, a loaded 9-millimeter pistol, and 51.9 grams of marijuana. The officers then arrested Midgette for violating the conditions of his probation. A federal grand jury thereafter indicted Midgette for the offenses charged in this case — possession by a felon of firearms, in violation of 18 U.S.C. §§ 922(g)(i), 924; possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5861(d), 5871; and possession of marijuana, in violation of 21 U.S.C. § 844(a).

Midgette filed a motion to suppress the evidence seized, contending that the searches violated the Fourth Amendment because the probation officer lacked the reasonable suspicion necessary to conduct the searches and because the probation officer did not comport with North Carolina law in having police officers conduct the searches. The motion was referred to a magistrate judge under 28 U.S.C. § 636(b)(1)(B), and the magistrate judge made findings of fact and recommended that Midgette's motion be denied on each ground that he raised.

Midgette timely filed three objections to the magistrate judge's report, contending (1) that the magistrate judge improperly assumed that when Midgette was searched in March 2004, he was on probation for the January 14, 2004 offense; (2) that because the searches were conducted by police officers, not the probation officer, they violated North Carolina's probation law; and (3) that the magistrate judge clearly erred in finding that the searches were conducted during a regularly scheduled appointment with the probation officer.

The district court overruled Midgette's objections by order dated January 26, 2005, finding that Midgette was under supervised probation at the time of the search; that the police officers' participation in the searches did not violate North Carolina law; and that the searches were conducted in connection with Midgette's regularly scheduled appointment with his probation officer. The court thereupon adopted the magistrate judge's proposed findings and recommendation and denied Midgette's motion to suppress.

Midgette thereafter pleaded guilty, reserving his right to appeal the district court's order denying his motion to suppress under Federal Rule of Criminal Procedure 11(a)(2). The district court sentenced Midgette to 46 months' imprisonment.

On appeal, Midgette contends that the searches were illegal under the Fourth Amendment for three reasons: (1) North Carolina's probation law fails to require individualized suspicion for warrantless searches; (2) Probation Officer Edwards and the police officers lacked reasonable suspicion that Midgette possessed contraband; and (3) the searches violated North Carolina law because they were conducted by police officers rather than by a probation officer. The government contends that Midgette waived the first two issues by failing to raise them as objections to the magistrate judge's report.

II

We agree with the government that Midgette's arguments on appeal are far broader than the issues he presented to the district court as objections to the magistrate judge's report. Midgette only challenged the magistrate judge's findings that supported his conclusion that the probation officer complied with North Carolina's probation

law. He argued that he was not shown to be on probation for the January 2004 conviction at the time of the March 2004 searches (although he did not challenge his probation status as a result of his February 2004 sentence); that police officers were not allowed to conduct the searches; and that at the time of the searches, he was not on a regularly scheduled visit to the probation office. He challenged neither the constitutionality of the North Carolina law itself, nor the lack of reasonable suspicion. This has prompted the government to contend that Midgette waived these two arguments on appeal as he did not present them to the district court as objections to the magistrate judge's report.

Midgette's motion to suppress was referred to a magistrate judge for proposed findings and recommendations, pursuant to 28 U.S.C. § 636(b)(1)(B). That provision requires that a party objecting to the magistrate judge's report and recommendations file objections with the district court within ten days, and we have held that "a party who fails to object to a magistrate's report is barred from appealing the judgment of a district court adopting the magistrate's findings." *Wright v. Collins*, 766 F.2d 841, 845 (4th Cir. 1985); *see also United States v. Schronce*, 727 F.2d 91, 93-94 (4th Cir. 1984). The requirement to make objections preserves the district court's role as the primary supervisor of magistrate judges, *see Wright*, 766 F.2d at 845, and conserves judicial resources by training the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations, *see Thomas v. Arn*, 474 U.S. 140, 147-48 (1985).

While Midgette did timely object to some portions of the magistrate judge's report, he did not object to all of the issues that he now seeks to argue on appeal.

We have generally applied the waiver rule when a party fails to make any timely objections to a magistrate judge's report, without addressing the situation where a party objects to certain issues but raises other issues on appeal. *See, e.g.*, *Wells v. Shriners Hosp.*, 109 F.3d 198, 199 (4th Cir. 1997); *Schronce*, 727 F.2d at 93-94. We now conclude that a party also waives a right to appellate review of particular issues by failing to file timely objections specifically directed to those issues. Not only are the reasons for the general waiver rule

equally applicable to the waiver of specific issues, the governing statute itself reveals its intent to have objections focus on specific issues, not the report as a whole. *See* 28 U.S.C. § 636(b)(1). Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only "*those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*." *Id.* (emphasis added); *see also* Fed. R. Crim. P. 59(b)(2) (requiring objecting party to file "*specific*, written objections to the proposed findings and recommendations" (emphasis added)); *cf.* Fed. R. Civ. P. 72(b) (same).

We have previously applied § 636(b)(1) to effect the waiver of specific issues, even though timely objections had been filed as to other issues. *See Praylow v. Martin*, 761 F.2d 179, 180 n.1 (4th Cir. 1985) (noting that because "the State did not object to the magistrate's finding that Brown was appointed on April 22, 1980 [as opposed to April 21, 1980] . . . the State is precluded from arguing this point on appeal"). We noted in *Praylow*, however, that the issue waived was not material to our disposition of the case. *See id.* Also, we observed subsequently in *Page v. Lee*, 337 F.3d 411, 417 n.3 (4th Cir. 2003), that the waiver of issues had not been specifically addressed in our circuit in a published opinion, although we did note that "other circuits have held that the failure to raise an objection sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute waives any appellate review." (Internal quotation marks and citations omitted). But again in *Page* we observed that "petitioner's failure to object to the magistrate judge's recommendation with the specificity required by [Federal Rule of Civil Procedure 72(b)] is, standing alone, a sufficient basis upon which to affirm the judgment of the district court *as to this claim*." *Id.* (emphasis added).

To eliminate any suggestion that our previous observations were dicta, we now hold that to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection. In so holding, we join the other circuits that have considered the issue. *See United*

*States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *Lockert v. Faulkner*, 843 F.2d 1015, 1019 (7th Cir. 1988); *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984).

To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

For these reasons, we conclude that Midgette waived his right to argue that the North Carolina probation scheme is unconstitutional and that the probation officer did not have a reasonable suspicion that Midgette possessed contraband.

III

Alternatively, we reject Midgette's contention that the North Carolina probation law is invalid. He contends that because the law does not require "any degree of certainty that the probationer actually possesses contraband or that he has violated his probation or the law," searches conducted pursuant to its warrantless search provision, N.C. Gen. Stat. § 15A-1343(b1)(7), violate the Fourth Amendment.

The North Carolina probation law requires that a defendant placed on probation be given a suspended sentence. It also mandates a list of conditions of probation and authorizes another list of optional, special conditions. *See* N.C. Gen. Stat. §§ 15A-1342(c), -1343(b), -1343(b1). One of the special conditions authorized by the statute, to which Midgette was subjected in both probation orders, requires that the probationer

> Submit at reasonable times *to warrantless searches* by a
> probation officer of his or her person and of his or her vehi-

> cle and premises while the probationer is present, for pur-
> poses specified by the court and reasonably related to his or
> her probation supervision, but the probationer may not be
> required to submit to any other search that would otherwise
> be unlawful.

N.C. Gen. Stat. § 15A-1343(b1)(7) (emphasis added). Thus, the stat-
ute authorizes the warrantless search of a probationer and his effects
subject to specified criteria of reasonableness that (1) the search be
conducted at a reasonable time; (2) the probationer be present during
the search; (3) the search be conducted for purposes specified by the
court in imposing probation; and (4) the search be "reasonably
related" to probation supervision.

Midgette's argument that this law lacks sufficient limitations to
render it reasonable under the Fourth Amendment is foreclosed by
*Griffin v. Wisconsin*, 483 U.S. 868 (1987), where the Supreme Court
upheld an analogous probation scheme against a Fourth Amendment
challenge.

In *Griffin*, the Supreme Court upheld a warrantless search of a pro-
bationer's residence conducted pursuant to Wisconsin's probation
scheme, which permitted such searches if "reasonable grounds"
existed to believe the probationer possessed contraband. 483 U.S. at
871-72. Considering the constitutionality of a scheme that authorized
warrantless searches, the Court noted that Wisconsin's operation of a
probation system "present[ed] 'special needs' beyond normal law
enforcement that may justify departures from the usual warrant and
probable-cause requirements." *Id.* at 873-74. Particularly, the State
had a "special need" to supervise the probationer's "observance of
special probation restrictions," which were designed to "assure that
the probation serve[d] as a period of genuine rehabilitation and that
the community [was] not harmed by the probationer's being at large."
*Id.* at 874-75 (internal quotation marks and citation omitted). This
goal of the probation system was underscored and promoted by the
fact that probation officers, unlike police officers, were charged with
both promoting the "welfare of the probationer" and protecting the
public interest. *Id.* at 876. In light of these "special needs," the *Griffin*
Court found that warrantless searches of probationers' residences con-

ducted by probation officers in accordance with the statute were justified.

In *Griffin*, a probation officer received a tip from a detective that "there were or might be guns in Griffin's apartment." 483 U.S. at 871. Even though the probation officer had no other corroborating information, the Court held that the detective's tip sufficed to give the probation officer reasonable grounds to search the apartment, and therefore, the search comported with the governing probation regulation. Accordingly, "[t]he search of Griffin's residence was 'reasonable' within the meaning of the Fourth Amendment because it was conducted pursuant to a valid regulation governing probationers." *Id.* at 880.

The same is true in this case. North Carolina has the identical need to supervise probationers' compliance with the conditions of their probation in order to promote their rehabilitation and protect the public's safety. To satisfy this need, North Carolina authorizes warrantless searches of probationers by probation officers. But North Carolina has narrowly tailored the authorization to fit the State's needs, placing numerous restrictions on warrantless searches. The sentencing judge must specially impose the warrantless search condition, and not all probationers are subject to it; the search must be conducted during a reasonable time; the probationer must be present during the search; the search must be conducted for purposes specified by the court in the conditions of probation; and it must be reasonably related to the probationer's supervision. *See* N.C. Gen. Stat. § 15A-1343(b1)(7). These criteria impose meaningful restrictions, guaranteeing that the searches are justified by the State's "special needs," not merely its interest in law enforcement.

Midgette attempts to distinguish North Carolina's probation scheme from the Wisconsin scheme upheld in *Griffin* on the basis that the Wisconsin scheme required that the probation officer have individualized suspicion that the probationer possessed contraband before conducting the search, whereas the North Carolina scheme requires no such suspicion. This argument, however, misunderstands *Griffin*'s "special needs" rationale, which did not make individualized suspicion the *sine qua non* of a valid probation scheme. Rather, the *Griffin* Court's analysis first evaluated Wisconsin's "special need" for effec-

tive supervision of probationers, and then it tested whether that need justified the "degree of impingement upon privacy" authorized by the probation scheme. *See id.* at 875. Indeed, this very approach has been repeated in numerous other "special needs" cases, many of which have found that the governmental need justified even *suspicionless* searches pursuant to a program that was, considered as a whole, reasonably tailored. *See, e.g.*, *Bd. of Educ. v. Earls*, 536 U.S. 822, 837-38 (2001) (upholding suspicionless drug testing of students involved in extracurricular activities); *Mich. Dep't of State Police v. Sitz*, 496 U.S. 444 (1990) (affirming suspicionless sobriety checks of motorists in order to reduce the safety hazards posed by drunk drivers); *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602 (1989) (upholding suspicionless urine and blood tests of certain railroad employees); *Bell v. Wolfish*, 441 U.S. 520, 558-61 (1979) (upholding suspicionless visual body-cavity searches of detainees following contact visits).

The restrictions that North Carolina's probation statute place on probationer searches undoubtedly assure that the searches conducted pursuant to it are justified by the State's special needs. We readily conclude, therefore, that searches conducted in conformity with the statute are reasonable under the Fourth Amendment.

IV

We also reject, again ruling alternatively, Midgette's contention that the probation officer did not have a reasonable suspicion of criminal activity. Midgette argues, independent of his challenge to the North Carolina law, that the probation officer in this case did not have "reasonable suspicion that Mr. Midgette possessed contraband when she permitted police to search him and his car" and therefore the searches were unreasonable under the Fourth Amendment. *See United States v. Knights*, 534 U.S. 112, 122 (2001).

In *Knights*, the Supreme Court held that a warrantless search by a police officer of a probationer conducted pursuant to the conditions of his probation and supported by reasonable suspicion satisfied the Fourth Amendment. 534 U.S. at 122. As the Court stated:

> When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity,

> there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable.

*Id.* at 121. But because of the existence of facts giving officers reasonable suspicion, the Court stopped short of deciding whether a *suspicionless* search of a probationer would violate the Fourth Amendment. *Id.* at 120 n.6. Similarly, we do not need to decide that issue, because in this case, Probation Officer Edwards had a reasonable suspicion that Midgette may be in possession of firearms, as prohibited by his conditions of probation and by law.

Reasonable suspicion requires "a particularized and objective basis for suspecting the person [searched] of criminal activity." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). It is "a less demanding standard than probable cause and requires a showing considerably less demanding than preponderance of the evidence." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Reasonable suspicion may be based simply upon a tip that has "some particular indicia of reliability." *United States v. Perkins*, 363 F.3d 317, 324-26 (4th Cir. 2004). Indeed, in *Griffin*, the Court noted that a tip received by a detective that "there were or might be guns in [the probationer's] apartment" provided the probation officer with reasonable suspicion. 483 U.S. at 871.

In this case, Probation Officer Edwards received a tip identical to that in *Griffin* that Midgette may be in possession of firearms. *See Griffin*, 483 U.S. at 871. In addition, the tip carried indicia of reliability inasmuch as its source was Sergeant Wilcutt of the New Bern Police Department, an experienced law enforcement officer who knew Midgette. Just as courts trust "the practical experience of officers who observe on a daily basis what transpires on the street," *United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993), so also could Probation Officer Edwards trust that Sergeant Wilcutt had reasonable grounds for suspecting Midgette of possessing firearms. Additionally, Sergeant Wilcutt provided Edwards with some objective grounds for his suspicion — that he was familiar with Midgette, that Midgette had a reputation for carrying firearms, and that Midgette had personally retrieved some firearms from his police station.

Because Probation Officer Edwards had a reasonable suspicion that Midgette possessed firearms, the search was reasonable under the

Fourth Amendment. *Knights*, 534 U.S. at 121; *cf. Samson v. California*, 126 S. Ct. 2193, 2202 (2006) (holding that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee").

V

Finally, Midgette argues, as he did to the district court through objections to the magistrate judge's report, that the search was conducted in violation of North Carolina law and therefore was unreasonable under the Fourth Amendment. Section 15A-1343(b1)(7) of the North Carolina General Statutes authorizes *probation officers*, but not police officers, to conduct warrantless searches under North Carolina's probation scheme. Midgette contends that the searches violated this scheme because police officers, not the probation officer, conducted the searches. He asserts that Probation Officer Edwards completely capitulated to the "whim of the police" and simply stood by while officers conducted the search, and therefore the government cannot claim that she was conducting the search.

While North Carolina's probation law authorizes only probation officers to conduct warrantless searches, that authorization does not preclude the probation officer from obtaining help from the police department for the purpose of physically conducting the search. In cases involving the precise statutory scheme under consideration here, North Carolina courts have held that "the presence and participation of police officers in a search conducted by a probation officer, pursuant to a condition of probation, does not, standing alone, render the search invalid." *State v. Church*, 430 S.E.2d 462, 466 (N.C. Ct. App. 1993); *see also State v. Howell*, 277 S.E.2d 112, 114 (N.C. Ct. App. 1981). In both *Church* and *Howell*, police officers participated in a warrantless search of a probationer's residence at the direction of a probation officer. *See Church*, 430 S.E.2d at 465; *Howell*, 277 S.E.2d at 114. Furthermore, in *Church*, the court sanctioned a probationer search even when it was initiated by police officers. The police officers had viewed marijuana on the probationer's premises and then asked the probation officer to conduct a search. 430 S.E.2d at 463-64. Upon seeing the marijuana herself, the probation officer directed the police officers to conduct the search. *Id.* at 464.

In sum, these North Carolina cases hold that police officers may conduct the warrantless search of a probationer — indeed may even suggest the search — so long as the search is authorized and directed by the probation officer.

The searches at issue in this case fall squarely under the holdings of these precedents. After receiving the tip that Midgette may have been in possession of a firearm, Probation Officer Edwards requested the assistance of the police department to search Midgette during the course of a regularly scheduled probation appointment. Moreover, it was Edwards who suggested that the police officers search Midgette's vehicle and his residence. While the police officers physically executed the searches, Probation Officer Edwards directed them and maintained supervision over them. The police officers' execution of the warrantless searches therefore did not exceed the authorization of the North Carolina probation statute as construed and applied by the North Carolina courts.

A different rule would underserve North Carolina's legitimate interest in administering its probation system. If probation officers were unable to enlist the aid of police officers in conducting probationer searches, they would likely hesitate to conduct certain searches of particularly dangerous probationers, thus undermining the probation officers' ability to supervise probationers effectively.

The judgment of the district court is

*AFFIRMED.*